IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PHILLIP BUSCH, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:06-CV-0493-L |
| § | |
| VIACOM INTERNATIONAL, INC., d/b/a § | |
| MTV NETWORKS, and JON STEWART, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss.[1] After careful consideration of the motion, response, reply, record, legal briefing and applicable authority, the court **grants** Defendants' Motion to Dismiss.

## I.   Procedural and Factual Background

This is an action for defamation and misappropriation of image. *Pro se* Plaintiff Phillip Busch ("Plaintiff" or "Busch"),[2] a bodybuilder who resides in Addison, Dallas County, Texas, brings this action against Defendants Viacom International Inc. ("Viacom") and Jon Stewart ("Stewart"), the anchor of *The Daily Show with Jon Stewart* ("*The Daily Show*"), a nightly news satire that airs on Comedy Central, owned and operated by Viacom. Stewart resides in the State of New York.

---

[1] In support of Defendants' Motion to Dismiss, Defendant Jon Stewart has filed "Brief in Support of Stewart's Rule 12(b)(2) Motion to Dismiss" and both Defendants have filed "Brief in Support of Defendants' Rule 12(b)(6) Motion to Dismiss." The court will, as a threshold matter, determine whether Jon Stewart's motion to dismiss under Fed. R. Civ. P. 12(b)(2) has merit, and then address Defendants' joint motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

[2] As pointed out by Defendants (Def. Brief at 4 n.5), although Busch is appearing *pro se* in this lawsuit, his Complaint substantially mirrors the complaint he filed in *Busch v. Robertson, et al.*, No. 3:05-CV-2043, while he was represented by counsel. Accordingly, although the court will still construe his pleadings liberally, the court is cognizant of this fact.

**Memorandum Opinion and Order – Page 1**

Production and filming of *The Daily Show* take place in New York City. Plaintiff's allegations arise from an October 2005 broadcast of *The Daily Show*, specifically a satiric segment involving a "fake endorsement" of a dietary shake promoted by television evangelist Pat Robertson ("Robertson"). At the end of the segment, *The Daily Show* featured a brief replay of an episode of *The 700 Club*, a talk show hosted by Robertson, which included Plaintiff's image. On or about July 13, 2005, Plaintiff had appeared as a guest on *The 700 Club*, filmed in Virginia Beach, Virginia, to discuss his weight loss and Robertson's diet shake following his more than 200-pound weight loss over a 15-month period where he had used elements of Robertson's weight-loss program featured on *The 700 Club*, as well as "Pat's Great Tasting Diet Shake," a diet shake based on a recipe developed by Robertson.[3]

According to the Complaint, "On or about October 15, 2005, *The Daily Show* aired a fake endorsement by Pat's Diet Shake. The fake endorsement included a segment from General Nutrition Corporation's television commercial for the product, some commentary by one of *The Daily Show* correspondents, and, at the end, a clip from *The 700 Club* that clearly showed Pat Robertson shaking hands with Mr. Busch and [Robertson] exclaiming 'thanks for using the shake!'" Compl. ¶¶ 47-48.

On February 16, 2006, Busch filed this lawsuit in the 192nd District Court of Dallas County, Texas, seeking compensatory and punitive damages. Defendants removed the action to this court

---

[3]In a separate lawsuit brought by Busch, which this court has since transferred to the Eastern District of Virginia for possible consolidation with a related action pending in that federal district, Plaintiff has sued the Christian Broadcasting Network and Robertson for misappropriating his personal image by engaging in allegedly unauthorized use of his "before" and "after" weight-loss photographs in the commercial promotion and marketing of "Pat's Great Tasting Diet Shake." *See The Christian Broadcasting Network Inc. and M.G. "Pat" Robertson v. Phillip Busch*, Civil Action No. 2:05-CV-558 (E.D. Va.). In that suit, Plaintiff alleges that his consent regarding the use of his weight-loss photographs was limited to display of his photographs solely to inspire viewers of *The 700 Club* to lose weight, but that Defendants exceeded the scope of consent to promote a diet shake for commercial gain.

**Memorandum Opinion and Order – Page 2**

on March 20, 2006 based on diversity of citizenship and because the amount in controversy exceeded $75,000. On April 18, 2006, Defendants filed their motion to dismiss.

**II.    Analysis**

In support of Defendants' Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b), Defendant Jon Stewart has filed "Brief in Support of Stewart's Rule 12(b)(2) Motion to Dismiss," contending that this court lacks personal jurisdiction over him. Defendant Viacom has filed a "Brief in Support of Defendants' Rule 12(b)(6) Motion to Dismiss," contending that Plaintiff's Complaint should be dismissed for failure to state a claim. Defendant Stewart has joined Viacom in its Rule 12(b)(6) legal brief, subject to and without waiving his challenge to personal jurisdiction. Accordingly, the court will, as a threshold matter, determine whether it has personal jurisdiction over Stewart, and then consider whether Plaintiff's Complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**A.    Personal Jurisdiction**

**1.    Legal Standard**

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F.Supp.2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits,

interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

**Memorandum Opinion and Order – Page 5**

## 2.     Stewart's Arguments

Defendant Stewart contends that Plaintiff has failed to establish a prima facie case for the court's assertion of personal jurisdiction over him. Stewart has submitted a Declaration, stating that:

> •He lives and resides in the State of New York and has never maintained a residence in Texas;
>
> •He has never owned real property in Texas and never maintained an office in Texas;
>
> •He has never had employees or agents residing in Texas, and has never designated an agent for service of process in Texas;
>
> •He has never maintained a bank account in Texas, and has never held a professional license in Texas;
>
> • He has never had a telephone listing in Texas, and has never had a motor vehicle registered in Texas;
>
> • He does not regularly transact business in Texas;
>
> • He does not regularly travel to Texas and only recalls visiting Texas twice – once to perform a show in Lubbock in the mid-1990s and once to perform a show in Austin in 1998 or 1999; and
>
> • He did not visit Texas or conduct any interviews or research in Texas in connection with the challenged broadcast, and had no involvement in the selection or editing of the challenged clip. At the time the challenged broadcast was aired, he had never heard of Plaintiff and did not know that he lived in Texas.

*See* Def. App. at Ex. B (Declaration of Jon Stewart ¶¶ 3-10).

In Plaintiff's response, amidst unrelated allegations about actor Tom Cruise, the film *Mission Impossible III*, *South Park* (another Comedy Central broadcast), and the Prophet Muhammed, as well as extensive references to the lawsuit he filed against Robertson and The Christian Broadcasting Network (*see supra* n. 3), Plaintiff asserts with no factual support that Stewart's statements in his Declaration that he had no involvement with the researching, editing or selecting

**Memorandum Opinion and Order – Page 6**

of the broadcast clip are "false." *See* Pl. Resp. at 1 ("Mr. Stewart, who obviously being so involved in all aspects of the program, had prior knowledge of the segment. Maybe we are to believe that the segment jumped out of the script onto his lap and he had no idea what was transpiring."). The court will now address whether it has specific jurisdiction over Stewart, and then address general jurisdiction.

###       a.       Specific Jurisdiction

The court considers first whether it may exercise specific jurisdiction over Defendant Stewart. To reiterate, Stewart argues that this court lacks specific jurisdiction over him and has filed a Declaration in support. Plaintiff's Complaint contains no allegations that Stewart has any individual personal contacts with Texas.

As set forth above, specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.8; *see also Burger King*, 471 U.S. at 472 (same). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp.*, 444 U.S. at 297. Moreover, in the context of a media or libel case, in order to support a finding of specific jurisdiction, Plaintiff must establish that Texas was the "focal point" of both the challenged broadcast and the harm suffered. *See generally Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (upholding exercise of personal jurisdiction in California court over nonresident editor and writer for *National Enquirer* in libel case brought by actress Shirley Jones where defendants "expressly aimed" their conduct towards California, and California was "focal point both of the story and of

**Memorandum Opinion and Order – Page 7**

the harm suffered.").[4]  Under *Calder*, "[e]ach defendant's contacts with the forum state must be assessed individually." *Id.*  Thus, an employees contacts with the forum state cannot be judged based on his employer's activities in the forum state. *See id.*  Following *Calder*, the Fifth Circuit requires a demonstration that both "(1) the subject matter of and (2) the sources relied upon for the article were in the forum state." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir. 2005) (and cases cited therein).  A collateral reference to the forum state is insufficient to establish personal jurisdiction. *Id.*  The Fifth Circuit has made clear that *Calder's* "'effects' test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) ("[T]he plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*."); *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) ("*Calder's* 'effects' test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state.").

In this case, the challenged broadcast concerned a diet shake promoted by Robertson, and was about Robertson, not Plaintiff.  The six-second clip at issue is a replay of an episode of *The 700 Club* where Plaintiff voluntarily appeared on the set in Virginia Beach, Virginia.  The piece contains no reference to Texas or any activities by Plaintiff in Texas.  The piece was not directed at viewers of *The Daily Show* in Texas, but was broadcast nationwide.  There is no evidence before the court that Texas was the focal point of the challenged broadcast.  Moreover, Stewart did not visit Texas, call Texas or conduct any interviews or research in Texas related to the piece, nor was he involved

---

[4] The Court relied also on the fact that the *National Enquirer* had its largest circulation in California, indicating that defendants knew the brunt of Shirley Jones's injury would be felt in California where she lived and worked. *Id.* at 789-90.

**Memorandum Opinion and Order – Page 8**

in selecting or editing the challenged clip. Stewart Decl. ¶¶ 7, 9. At the time the challenged broadcast was aired, Stewart had never heard of Plaintiff and did not know he lived in Texas. *Id.* ¶ 10. The court has been presented with no facts from which it could conclude that Stewart aimed his conduct at Texas with regard to the challenged broadcast. *See Fielding*, 415 F.3d at 427. In short, there are no allegations or a shred of evidence that Texas was the "focal point" of the subject matter, or that the sources relied upon for the challenged broadcast were in Texas. Absent minimum contacts that represent "purposeful availment" by Stewart of the benefits of the forum state, and absent allegations or evidence that Defendant Stewart aimed any conduct relating to Plaintiff's claims at Texas, the court determines that it lacks specific jurisdiction over Stewart.

        **b.**      **General Jurisdiction**

The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.9. Cases involving general jurisdiction suggest that the threshold contacts required for assertion of such jurisdiction are very substantial. *See Davis v. Billick*, 2002 WL 1398560 at * 3 (June 26, 2002 N.D. Tex.) (Fitzwater, J.) (citing *Helicopteros Nacionales*, 466 U.S. at 416-19) (concluding there was no general jurisdiction where defendant traveled to Texas to negotiate sale of helicopters, regularly purchased helicopters in Texas, and sent pilots for training to Texas). In his Complaint, Plaintiff has not alleged any facts that typically underlie general jurisdiction, such as property ownership, payment of taxes, frequent travel, regular conduct of business, or maintenance of bank accounts in Texas. *See generally Middlebrook v. Anderson*, 2005 WL 350578 at *3 n.4 (Feb. 11, 2005 N.D. Tex.) (Fitzwater, J.). Additionally, Defendant Stewart has submitted a Declaration in which he

**Memorandum Opinion and Order – Page 9**

states that he has never lived in Texas, has never owned any real property in Texas, has never maintained an office in Texas, has never had any employees or agents in Texas, has never had any professional licenses, bank accounts or telephone listings in Texas and has only visited Texas twice – once to perform a show in Lubbock in the mid-1990s and once to perform a show in Austin in 1998 or 1999. Stewart Decl. ¶¶ 3-10. Because Plaintiff has failed to allege that Stewart has any individual personal contacts with Texas, let alone continuous and systematic contacts, and in light of the evidence set forth in Stewart's Declaration, the court determines that Plaintiff has failed to make out a *prima facie* case of general jurisdiction. Accordingly, the court determines that it lacks general jurisdiction over Defendant Stewart.

In short, the court determines that Plaintiff has failed to meet his burden of establishing a *prima facie* case of specific or general jurisdiction over Defendant Stewart. Accordingly, because the court lacks personal jurisdiction over Defendant Stewart, Plaintiff's claims against him must be dismissed.[5]

### B.     Failure to State a Claim under Rule 12(b)(6)

Defendants have moved to dismiss Plaintiff's defamation and misappropriation of image claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). As the court has determined that it lacks personal jurisdiction over Defendant Stewart, and as Stewart has not waived his objections to personal jurisdiction, the court can only address the failure to state a claim argument

---

[5]Further, even were the court to have personal jurisdiction over Stewart (which it does not), the assertion of such jurisdiction over Stewart would violate "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Asahi*, 480 U.S. at 105. The court agrees with Stewart that "[f]orcing [him], a New York citizen with no meaningful contacts with Texas, to defend this lawsuit in Texas would impose an unjustified and unconstitutional burden on him. This is especially true given that Stewart did not aim any conduct at Texas relating to the challenged broadcast and given that Texas was in no way the focal point or target of the challenged broadcast." Def. Brief in Support of Stewart's Rule 12(b)(2) Motion to Dismiss at 8.

**Memorandum Opinion and Order – Page 10**

as it relates to Defendant Viacom. After setting forth the legal standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the court will address Viacom's arguments.

### 1. Legal Standard

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

**Memorandum Opinion and Order – Page 11**

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A court, however, is not to strain to find inferences favorable to the plaintiff and is not to "accept conclusory allegations, unwarranted deductions or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Lake's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### 2.   Plaintiff's Defamation Claim

The elements of a cause of action for defamation under Texas law are that:

1. the challenged broadcast contains assertions of fact about the plaintiff;

2. the challenged assertions of fact are defamatory, injuring the plaintiff's reputation;

3. the challenged assertions of fact are false; and

4. defendants acted with actual malice in broadcasting the challenged assertions (or acted with negligence if the plaintiff is deemed a private individual).

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). *See generally New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964).

In support of its motion to dismiss Plaintiff's defamation claim, Viacom contends that Plaintiff's defamation claim fails as to each and every element of Texas defamation law. Specifically, Viacom argues that: (1) the challenged broadcast contains no assertions of fact about Plaintiff; (2) the broadcast contains no defamatory statements about Plaintiff; (3) the broadcast contains no false statements about Plaintiff; (4) Plaintiff has failed to alleged that Defendants acted

with negligence or actual malice regarding the truth of the broadcast; and (5) the broadcast constitutes parody and satire fully protected by the First Amendment to the United States Constitution.  In his response, Plaintiff fails to offer any legal arguments to refute these grounds for dismissal but instead repeats the allegations in his Complaint and accuses Stewart of making false statements in his Declaration.  He also recapitulates the allegations that are at issue in *The Christian Broadcasting Network Inc. and M.G. "Pat" Robertson v. Phillip Busch*, Civil Action No. 2:05-CV-558 (E.D. Va.), not relevant to this action against Viacom and Stewart.

Viewing all the allegations in the complaint as true, and after viewing the DVD of the challenged segment (*see* Def. Mot. at Ex. A),[6] the court determines that Plaintiff has failed to state a claim for defamation.  First, Plaintiff has failed to allege that Viacom made any false statements about him.  A review of the approximately six-second segment confirms that Plaintiff was never mentioned in the broadcast segment, and his appearance in the clip from *The 700 Club* was never identified.  As Viacom correctly argues, in the challenged broadcast it does not make any assertions of fact, false or otherwise, concerning Plaintiff that could even serve as the basis for his defamation claim.  *See generally New Times, Inc. v. Isaaks*, 146 S.W.3d 144, 157 (Tex. 2004) (publication must "be reasonably understood as describing actual facts" about the plaintiff in order to state a claim for defamation). The court further determines that, as a matter of law, because Plaintiff's image appears in a "fake endorsement" (Compl. ¶ 47) of Robertson's diet shake on *The Daily Show*, a satiric program,  no reasonable viewer would have believed that the challenged clip contained assertions

---

[6]Viacom has included a DVD of the challenged segment as an exhibit to its motion to dismiss.  As already set forth above in the court's legal standard (*see supra*), "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  The challenged segment is referred to in the Complaint and is central to Plaintiff's claims that Viacom defamed him and misappropriated his image.  Accordingly, the court may properly consider it in reviewing Viacom's motion to dismiss.  Plaintiff does not argue otherwise.

**Memorandum Opinion and Order – Page 13**

of fact about Plaintiff. *See generally Hustler Magazine v. Falwell*, 485 U.S. 46, 53-57 (1988) (no liability where parody could not reasonably be understood as describing actual facts about the plaintiff); *cf. Isaaks*, 146 S.W.3d at 157 (the "appropriate inquiry is objective, not subjective. Thus, the question is not whether some actual [viewers] were misled, as they inevitably will be, but whether the hypothetical reasonable [viewer] could be."). In short, because Plaintiff has failed to allege the first element of a claim for defamation, namely, that the challenged broadcast contains assertions of fact about him, and because no reasonable viewer would have believed that the challenged clip in an October 2005 broadcast of *The Daily Show* contained assertions of fact about him, Plaintiff's defamation claim must be dismissed for failure to state a claim.[7] Moreover, the Complaint contains no factual allegations from which the court could reasonably infer that the challenged broadcast contains defamatory statements about Plaintiff.

### 3.     Plaintiff's Misappropriation of Image Claim

To state a claim for invasion of privacy by misappropriation under Texas law, a plaintiff must satisfy three elements: (i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit

---

[7]Since the court has determined that Plaintiff failed to allege the most basic element of a defamation claim, namely, that the challenged broadcast contains assertions of fact about him, and because, as a matter of law, no reasonable viewer would have believed that the challenged clip contained assertions of fact about Plaintiff, the court need not consider Viacom's remaining arguments in support of its motion to dismiss Plaintiff's defamation claim. The court notes, however, that Plaintiff's defamation claim should alternatively be dismissed because, as Viacom properly argues, parody and satire, such as that contained in the "fake endorsement" of Pat's Diet Shake on *The Daily Show*, are protected forms of speech under the First Amendment. *See Isaaks*, 146 S.W.3d at 152 ("Humor is a protected form of speech, just as much to be given full scope, under  appropriate circumstances, as the political speech, journalistic expose, or the religious tract."); *Falwell*, 485 U.S. at 53-56 ([A]lthough it at times has a "caustic nature," parody is vital to "our political discourse."). Because of the protected nature of the speech at issue, even were the court to *sua sponte* allow amendment of pleadings, such amendment would prove futile in that no set of facts could be pleaded by Plaintiff to state a cause of action in light of existing law. Accordingly, the court will not allow Plaintiff a second "bite at the apple" to amend his Complaint.

**Memorandum Opinion and Order – Page 14**

to the defendant. *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994) (and cases cited therein).

In support of its motion to dismiss Plaintiff's misappropriation claim, Viacom contends that: (1) Plaintiff has failed to allege that it appropriated his image for commercial value; (2) its use of Plaintiff's image is protected by the "incidental use" doctrine; (3) it cannot be held liable for airing Plaintiff's image because his image was in the public domain; and (4) the First Amendment bars Plaintiff's claim for misappropriation. Once again, in his response, Plaintiff fails to supply the court with any sound legal arguments that he has satisfied the requisite elements for a claim of misappropriation under Texas law.

Even viewing all allegations in the Complaint as true, as the court must in considering a motion to dismiss for failure to state a claim, the court determines that Plaintiff has failed to state a claim for misappropriation of his image under Texas law. As stated by the Fifth Circuit, "[l]iability for misappropriation . . . will not arise when the information in question is in the public domain." *Matthews*, 15 F.3d at 440. Plaintiff's image was in the public domain after he voluntarily appeared on *The 700 Club* in July 2005 to publicly discuss his use of Pat's Diet Shake. Accordingly, he has failed to satisfy an essential element of pleading a claim of misappropriation under Texas law, and his claim must be dismissed.

Moreover, as discussed above with regard to the dismissal of Plaintiff's defamation claim, the First Amendment protects parody, such as the "fake endorsement" of Pat's Diet Shake at issue in the challenged broadcast, and therefore bars Plaintiff's misappropriation claim. *Matthews*, 15 F.3d at 440 (free speech defense to misappropriation claim recognized).[8]

---

[8] Although the court need not address Viacom's remaining arguments in support of its motion to dismiss, as an alternative ground for dismissal, the court agrees with Viacom that Plaintiff has failed to allege that Viacom appropriated his image for its *commercial value*. As set forth by the Fifth Circuit, "[t]he value of one's likeness is not appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with

**Memorandum Opinion and Order – Page 15**

**IV.     Conclusion**

For the reasons set forth above, the court **grants** Defendants' Motion to Dismiss. Specifically, as to Defendant Jon Stewart, having determined that it has no personal jurisdiction over him, the court **dismisses** Plaintiff's claims against him **without prejudice**. As to Defendant Viacom International Inc., having determined that Plaintiff Phillip Busch has failed to state a claim upon which relief may be granted, the court **dismisses** Plaintiff's claims against it **with prejudice**. Judgment dismissing this case will issue by separate document as required by Fed. R. Civ. P. 58.

**It is so ordered** this 21st day of February, 2007.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge

---

him, for purposes of publicity." *Matthews*, 15 F.3d at 437 (internal quotations omitted). As Viacom correctly argues, "Plaintiff has failed to allege that there is anything unique or valuable about his likeness that [Viacom] appropriated for commercial benefit." Def. Brief at 16. Plaintiff himself alleges that the challenged segment was a "fake promotion." Comp. ¶ 47. A "fake promotion" of Pat's Diet Shake simply cannot be squared with Plaintiff's conclusory allegation that Viacom used his image to promote Pat's Diet Shake on *The Daily Show*. *See* Compl. ¶ 50.